## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| ANDREW BARR, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> STEPHEN K. BANNON, BORIS EPSHTEYN, SARAH ABDUL a/k/a Sarah Abdul Razzaq a/k/a Sarah Abdulrazzi a/k/a Sarah Abdul Williams a/k/a Sarah Abdul Elliott, LET'S GO BRANDON COIN LLC, PATRIOT PAY LLC, WARROOM LLC, 354 NOD HILL LLC, and TWINDS LLC, <br><br> Defendants. | Case No. 1:26-cv-00452-ACR <br><br> Hon. Ana C. Reyes |

## PLAINTIFF'S RESPONSE TO BORIS EPSHTEYN AND TWINDS LLC'S NOTICE OF DISPOSITIVE MOTION

As alleged, Boris Epshteyn and his LLC, TWinds, secretly seized ownership and control of the Token—paying nothing, and instead financing their takeover with fees skimmed from the very retail investors they were courting—while publicly posing as mere "partners." Compl. ¶¶ 48–61, 77–80. Epshteyn held the smart-contract keys and the project's bank account, *id.* ¶¶ 23, 48–49; promised investments in the Token and donations to charities that never materialized, *id.* ¶¶ 68–73, 86; made representations about the Token's stability and security that were not true, *id.* ¶ 110; assured investors the venture was thriving while insiders drained the "charity" and "marketing" wallets and he personally pocketed six figures, *id.* ¶¶ 119–41; and then helped freeze investors out and abandon the project, promising a refund that never came, *id.* ¶¶ 192–97.

The Epshteyn Defendants now tell this Court they were "minimally involved." That is not what they told investors when plastering Epshteyn's face and credentials across the Token's promotional materials. *Id.* ¶¶ 77–81. They say investors should have known their Token was just as "volatile" as the rest. Yet, they told those investors it was "the way to protect yourself," "cannot be deflated," "safe," and "secure." *Id.* ¶¶ 77, 86, 110. That is not "buyer's remorse"; it is fraud.

## I.    Counts I and V Are Timely.

Neither the three-year repose nor one-year limitations period, 15 U.S.C. § 77m; D.C. Code § 31-5606.05(f)(1), bars these claims on the pleadings. Both are affirmative defenses that must be "conclusively" established on the face of the complaint, and even then, a complaint can only be dismissed where the plaintiff "could not possibly cure the deficiency." *Momenian v. Davidson*, 878 F.3d 381, 387–88 (D.C. Cir. 2017) (citation omitted). $PPY was a distinct security first offered to the public in 2024, Compl. ¶¶ 150–55—within the three-year repose period of the February 2026 filing. *Williams v. Binance*, 96 F.4th 129, 141 (2d Cir. 2024); *Goodrich v. Bank of Am., N.A.*, 2022 WL 1597582, at *6 (D.D.C. 2022), *aff'd*, 136 F.4th 347 (D.C. Cir. 2025). Mr. Barr may have last purchased $PPY on February 1, 2025, but the limitations period runs from the

"violation," 15 U.S.C. § 77m, which is the last "offer[] *or* s[ale]" of the unregistered security, *id.* § 77l(a)(1) (emphasis added)—and the Token continued to be offered through February 12, 2025. *See In re Elec. Data Sys. Corp. "ERISA" Litig.*, 305 F. Supp. 2d 658, 680–81 (E.D. Tex. 2004); *Stephenson v. Deutsche Bank AG*, 282 F. Supp. 2d 1032, 1064 (D. Minn. 2003); *see also Williams*, 96 F.4th at 143 n.6 (reserving judgment on whether "by continuing to offer [the security] … [defendant] engaged in an ongoing violation of the Securities Act").

## II.    The Complaint Plausibly Alleges the Token Is a Security (Counts I–VII).

Whether the Token is a "security" turns on the economic-reality test of *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946).  The Complaint pleads each *Howey* element: an investment of money; a common enterprise, both horizontal (investors' fortunes pooled through embedded transaction fees, liquidity pools, and "marketing" and "charity" wallets funded by every trade) and vertical (Defendants' fortunes rose and fell with that same trading activity); and a reasonable expectation of profits derived from the efforts of others—including the Epshteyn Defendants' promotion, control, and promised development of the ecosystem.  Compl. ¶¶ 207–29, 257–77.  *SEC v. Binance Holdings Ltd.*, 738 F. Supp. 3d 20, 49–50 (D.D.C. 2024)—the Epshteyn Defendants' own authority—found a crypto token plausibly "was offered and sold as an investment contract, and therefore, as a security."  *See also, e.g.*, *SEC v. Telegram Grp. Inc.*, 448 F. Supp. 3d 352 (S.D.N.Y. 2020); *SEC v. Kik Interactive Inc.*, 492 F. Supp. 3d 169 (S.D.N.Y. 2020).   The Epshteyn Defendants at best raise a factual dispute inappropriate for resolution at this early stage.

## III.    Fraud and Misrepresentation Are Adequately Pleaded (Counts II, VI, VIII–X).

Rule 9(b) does not apply to the CPPA or negligent misrepresentation claims.  *See Hardnett v. Select Portfolio Servicing, Inc.*, 800 F. Supp. 3d 27, 37 n.4 (D.D.C. 2025) (collecting cases).  As for the rest, a scienter inference need only be "cogent and at least as compelling as any opposing inference," and the allegations must be assessed "collectively" rather than "in isolation."  *Tellabs,*

2

*Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323–24 (2007). The Complaint attributes specific statements to Epshteyn by date and medium, including his false September 2022 assurance that the Token was "expanding to Europe," Compl. ¶¶ 68–86, 119–20, and pleads scienter through insider admissions that he "pilfered over $100,000" through a sham vendor and that there were "no funds for the coin," *id.* ¶¶ 121–41. Such allegations supply the "strong inference" the D.C. Circuit found sufficient in *In re Harman Int'l Indus., Inc. Sec. Litig.*, 791 F.3d 90 (D.C. Cir. 2015), and that this Court sustained in *Howard v. Liquidity Servs., Inc.*, 177 F. Supp. 3d 289 (D.D.C. 2016). TWinds is at minimum liable as a scheme participant. *See SEC v. Familant*, 910 F. Supp. 2d 83, 93–94 (D.D.C. 2012). Loss causation is thoroughly pled. Compl. ¶¶ 278–300.

The claims are timely because the self-concealing scheme was not discoverable until the February 2025 shutdown. *Id.* ¶¶ 230–37. *See Merck & Co. v. Reynolds*, 559 U.S. 633, 653 (2010) (two-year limitations period runs only when a "reasonably diligent plaintiff would have discovered 'the facts constituting the violation,' including scienter") (quoting 28 U.S.C. § 1658(b)). And the statute of repose for Section 10(b) is five years, not three. *Id.*

## IV.    Control-Person Liability Is Adequately Pleaded (Counts III, IV, and VII).

As just explained, the Complaint pleads primary violations and alleges Epshteyn owned TWinds and controlled the Company through it—including the smart-contract keys, treasury, and wallets. Compl. ¶¶ 23, 48–49. That is not "group pleading."

## V.    The CPPA Claim Survives (Count VIII).

The resale exclusion reaches only a buyer "regularly engaged in the business of buying … for later resale," not a purchaser who buys for personal use. *Adam A. Weschler & Son, Inc. v. Klank*, 561 A.2d 1003, 1005 (D.C. 1989). "A motive may be pecuniary and still be personal," even if the purchase was made "as an investment." *Ford v. ChartOne, Inc.*, 908 A.2d 72, 83 (D.C. 2006). Plaintiff bought the Tokens for personal use, not for any trade or business. Compl. ¶¶ 182–

3

83, 383.  The CPPA reaches "any and all parts of the economic output of society," including financial products, with no securities carve-out.  D.C. Code § 28-3901(a)(7).  The out-of-circuit *In re FTX Cryptocurrency Exch. Collapse Litig.*, 781 F. Supp. 3d 1324, 1346 (S.D. Fla. 2025), is not a CPPA case and is beside the point because Plaintiff pleads the security theory in the alternative.

## VI.   Breach of Fiduciary Duty Is Adequately Pleaded (Count XI).

Unlike other jurisdictions "that strictly limit when a fiduciary relationship can exist, [] the District of Columbia courts have 'deliberately left the definition of a 'fiduciary relationship' open-ended, allowing the concept to fit a wide array of factual circumstances.'"  *Democracy Partners v. Project Veritas Action Fund*, 285 F. Supp. 3d 109, 121 (D.D.C. 2018) (citation omitted).  In D.C., a fiduciary relationship is "founded upon trust or confidence," and whether one exists is "fact-intensive" and "generally not amenable to dismissal."  *Id.* at 121–22.  The Complaint alleges Epshteyn exercised exclusive, discretionary control over the smart contract and investor-funded "marketing" and "charity" wallets and held himself out as a steward of investors' funds.  Compl. ¶¶ 402–08.  Even non-D.C. cases hold that such allegations state a fiduciary relationship in the digital-asset context.  *See Bhatia v. Silvergate Bank*, 725 F. Supp. 3d 1079, 1121–22 (S.D. Cal. 2024) (platform's "honest stewards of crypto" representations and promise that customer funds were "segregated and held in trust," together with solicitation, "sufficiently plead" fiduciary duty).

## VII.   Unjust Enrichment Is Adequately Pleaded (Count XII).

Unjust enrichment may be pleaded in the alternative; being "duplicative" is not a ground for dismissal.  *Smith v. Rubicon Advisors, LLC*, 254 F. Supp. 3d 245, 250 (D.D.C. 2017).  The premise that the Epshteyn Defendants "did not profit" is a fact question improper to resolve on a motion to dismiss and contradicted by the Complaint, which alleges Epshteyn took one billion Tokens, undisclosed $10,000 monthly payments, over $100,000 through a related-party vendor, and a share of roughly $2.7 million in misappropriated fees.  Compl. ¶¶ 48, 122–23, 126, 140–41.

4

Dated: August 11, 2026        Respectfully submitted,

*/s/ Yusef Al-Jarani*
Constantine P. Economides (*pro hac vice*)
Eric S. Rosen (SBN NY0671)
Yusef Al-Jarani (*pro hac vice*)
**DYNAMIS LLP**
175 Federal Street, Suite 1200
Boston, Massachusetts 02110
(305) 985-2959
ceconomides@dynamisllp.com
erosen@dynamisllp.com
yaljarani@dynamisllp.com

*Counsel to Plaintiff and the Proposed Class*

5